**No. 21-1274**

---

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

---

DIANA MEY, *et al.*,
*Plaintiffs-Appellees*,

v.

DIRECTV, LLC,
*Defendant-Appellant.*

---

Appeal from Order of the United States District Court for the
Northern District of West Virginia
No. 5:17-cv-00179-JPB-JPM (Bailey, J.)

---

**OPENING BRIEF OF DEFENDANT-APPELLANT
DIRECTV, LLC**

---

Evan M. Tager
Archis A. Parasharami
Daniel E. Jones
Carmen N. Longoria-Green
MAYER BROWN LLP
1999 K Street, N.W.
Washington, DC 20006
Telephone: (202) 263-3000
etager@mayerbrown.com

*Attorneys for Defendant-Appellant DIRECTV, LLC*

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

No. _21-1274_       Caption: _Mey v. DIRECTV, LLC_____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_DIRECTV, LLC_____ who is _Appellant,_ makes the following disclosure:

1.    Is party/amicus a publicly held corporation or other publicly held entity?

☐YES ☒NO

2.    Does party/amicus have any parent corporations?          ☒YES ☐NO

If yes, identify all parent corporations, including all generations of parent corporations: _DIRECTV, LLC is wholly owned by DIRECTV Holdings LLC. DIRECTV Holdings LLC is wholly owned by The DIRECTV Group, Inc. The DIRECTV Group, Inc. is wholly owned by DIRECTV Group Holdings, LLC. DIRECTV Group Holdings, LLC is wholly owned by AT&T Inc._

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?          ☒YES ☐NO

If yes, identify all such owners: _AT&T Inc._____

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?

☐YES ☒NO

If yes, identify entity and nature of interest: _N/A_____

5.    Is party a trade association? (amici curiae do not complete this question)

☐YES ☒NO

If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member: _N/A_____

6.    Does this case arise out of a bankruptcy proceeding?          ☐YES ☒NO

If yes, identify any trustee and the members of any creditors' committee: _N/A

i

7.    Is this a criminal case in which there was an organizational victim? ☐YES ☒NO

If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Evan M. Tager                Date: May 18, 2021
Counsel for: DIRECTV, LLC

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. v

INTRODUCTION ............................................................................ 1

JURISDICTIONAL STATEMENT ...................................................... 4

STATEMENT OF ISSUES ................................................................. 5

STATEMENT OF THE CASE ............................................................ 5

    A.    Mey Agrees To Arbitrate Her Disputes With AT&T Mobility And Its Affiliates. ..................................................... 5

    B.    AT&T's Arbitration Provision Contains Consumer-Friendly And Cost-Effective Features Recognized By The U.S. Supreme Court. ........................................................ 8

    C.    Mey Sues DIRECTV Notwithstanding Her Arbitration Agreement. .................................................................... 11

    D.    This Court Holds That Mey Agreed To Arbitrate Her TCPA Claims Against DIRECTV. .................................... 13

    E.    On Remand, The District Court Relies On Judge Harris's Dissent And Out-Of-Circuit Case Law To Hold That The Arbitration Agreement Is Unconscionable. ......... 17

SUMMARY OF ARGUMENT ................................................................ 20

STANDARD OF REVIEW .................................................................... 24

ARGUMENT .................................................................................... 24

I.    Mey Has Waived Her Argument That The Arbitration Provision Is Unconscionable. ...................................................... 24

    A.    Mey's Failure To Raise Unconscionability In The Initial District-Court Proceedings And In The First Appeal Constitutes A Waiver ............................................ 24

    B.    The District Court's Contrary Conclusion Was An Abuse Of Discretion. ........................................................ 31

II.    The Arbitration Agreement Is Not Unconscionable. ..................... 34

## TABLE OF CONTENTS
### (continued)

**Page**

A.    The District Court's Unconscionability Analysis Is Irreconcilable With This Court's Opinion In *Mey I*. ............ 34

B.    AT&T's Arbitration Provision Is Not Unconscionable Under West Virginia Law. .................................................... 42

    1.    The arbitration agreement is not procedurally unconscionable. ............................................................ 42

    2.    The arbitration agreement is not substantively unconscionable. ............................................................ 48

C.    The District Court's Application Of West Virginia's Unconscionability Doctrine Is Preempted By The FAA. ...... 53

CONCLUSION ....................................................................... 57

REQUEST FOR ORAL ARGUMENT .................................... 59

CERTIFICATE OF COMPLIANCE ....................................... 60

CERTIFICATE OF SERVICE ................................................ 61

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*14 Penn Plaza LLC v. Pyett,*
  556 U.S. 247 (2009)...............................................................54

*Am. States Ins. v. Surbaugh,*
  745 S.E.2d 179 (W. Va. 2013) ..............................................47

*Anderson v. Amazon.com, Inc.,*
  478 F. Supp. 3d 683 (M.D. Tenn. 2020)...............................44

*Arnold v. United Cos. Lending Corp.,*
  511 S.E.2d 854 (W. Va. 1998) ..............................................51

*AT&T Mobility LLC v. Concepcion,*
  563 U.S. 333 (2011)................................................... *passim*

*Baker v. Green Tree Servicing LLC,*
  2010 WL 1404088 (S.D. W. Va. Mar. 31, 2010)..................52

*Barrow v. Falck,*
  11 F.3d 729 (7th Cir. 1993)..................................................36

*Bresler v. Wilmington Tr. Co.,*
  855 F.3d 178 (4th Cir. 2017)................................................29

*Brown ex rel. Brown v. Genesis Healthcare Corp.,*
  724 S.E.2d 250 (W. Va. 2011) ..............................................45

*Brown v. City of New York,*
  862 F.3d 182 (2d Cir. 2017) .................................................24

*Brown v. Genesis Healthcare Corp.,*
  729 S.E.2d 217 (W. Va. 2012) ........................................50, 51

*Carbajal v. H&R Block Tax Servs., Inc.,*
  372 F.3d 903 (7th Cir. 2004)................................................57

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Cordoba v. DIRECTV, LLC,*
  801 F. App'x 723 (11th Cir. 2020)......................................................40

*Credit Acceptance Corp. v. Front,*
  745 S.E.2d 556 (W. Va. 2013) ..................................................22, 42

*Crocker v. Piedmont Aviation, Inc.,*
  49 F.3d 735 (D.C. Cir. 1995) ..................................................32, 33

*Dan Ryan Builders, Inc. v. Nelson,*
  2014 WL 496775 (N.D. W. Va. Feb. 6, 2014)......................................52

*Dan Ryan Builders, Inc. v. Nelson,*
  737 S.E.2d 550 (W. Va. 2012) ...........................................................48

*Dean Witter Reynolds, Inc. v. Byrd,*
  470 U.S. 213 (1985)..........................................................................2, 26

*Dillon v. BMO Harris Bank, N.A.,*
  787 F.3d 707 (4th Cir. 2015) ..............................................................24

*DIRECTV, Inc. v. Imburgia,*
  577 U.S. 47 (2015)...............................................................................35

*Fiberlink Commc'ns Corp. v. Magarity,*
  72 F. App'x 22 (4th Cir. 2003)........................................................25gi

*Gilmer v. Interstate/Johnson Lane Corp.,*
  500 U.S. 20 (1991)...............................................................................54

*Goodwin v. Branch Banking & Trust Co.,*
  2017 WL 960028 (S.D. W. Va. Mar. 10, 2017)....................................51

*Hearn v. Comcast Cable Commc'ns, LLC,*
  992 F.3d 1209 (11th Cir. 2021)...........................................................40

*Hightower v. GMRI, Inc.,*
  272 F.3d 239 (4th Cir. 2001)..............................................................26

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*In re Checking Account Overdraft Litig.*,
  754 F.3d 1290 (11th Cir. 2014)..................................................27, 30

*In re Jones*,
  397 B.R. 775 (S.D. W. Va. 2008)...........................................29

*James v. Jacobson*,
  6 F.3d 233 (4th Cir. 1993)....................................................31

*Kessler v. Nat'l Enters., Inc.*,
  203 F.3d 1058 (8th Cir. 2000).........................................32, 33

*Kindred Nursing Ctrs. Ltd. P'Ship v. Clark*,
  137 S. Ct. 1421 (2017).........................................................55

*Kucharek v. Dan Ryan Builders, Inc.*,
  2013 WL 3365249 (N.D. W. Va. July 3, 2013)...................52

*Laber v. Harvey*,
  438 F.3d 404 (4th Cir. 2006)................................................28

*Labor Relations Div. of Constr. Indus. of Mass., Inc. v.
  Teamsters Local 379*,
  156 F.3d 13 (1st Cir. 1998) ...............................................25

*Larsen v. Citibank FSB*,
  871 F.3d 1295 (11th Cir. 2017)............................................44

*L.J. v. Wilbon*,
  633 F.3d 297 (4th Cir. 2011)..................................21, 35, 41

*Makarowski v. AT&T Mobility, LLC*,
  2009 WL 1765661 (C.D. Cal. June 18, 2009) ....................54

*McFarland v. Wells Fargo Bank, N.A.*,
  810 F.3d 273 (4th Cir. 2016)........................................22, 48

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Mclean Contracting Co. v. Waterman S.S. Corp.*,
   277 F.3d 477 (4th Cir. 2002) ............................................. 24

*Mey v. DIRECTV, LLC*,
   971 F.3d 284 (4th Cir. 2020) (*Mey I*) ........................................ *passim*

*Mims v. Arrow Fin. Servs., LLC*,
   565 U.S. 368 (2012) ..................................................................... 4

*Morewitz v. W. of England Ship Owners Mut. Prot. & Indem.*
   *Ass'n (Luxembourg)*,
   62 F.3d 1356 (11th Cir. 1995) ............................................. 30

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ............................................................. 27

*Muriithi v. Shuttle Express, Inc.*,
   712 F.3d 173 (4th Cir. 2013) ......................................... 4, 53

*Nationstar Mortg., LLC v. West*,
   785 S.E.2d 634 (W. Va. 2016) ................................... *passim*

*Nw. Ind. Tel. Co. v. FCC*,
   872 F.2d 465 (D.C. Cir. 1989) .............................. 25, 26, 29

*Omni Outdoor Advert., Inc. v. Columbia Outdoor*
   *Advert., Inc.*,
   974 F.2d 502 (4th Cir. 1992) ...................... 24, 25, 27, 29

*Parm v. Bluestem Brands, Inc.*,
   898 F.3d 869 (8th Cir. 2018) ............................. 16, 37, 38

*Preston v. Ferrer*,
   552 U.S. 346 (2008) ................................................... 27

*Price v. Morgan Fin. Grp.*,
   2013 WL 3184671 (W. Va. June 24, 2013) ...................... 44

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Revitch v. DIRECTV, LLC*,
  977 F.3d 713 (9th Cir. 2020) ..................................................... *passim*

*Rodriguez de Quijas v. Shearson/Am. Express, Inc.*,
  490 U.S. 477 (1989) ............................................................................ 53

*Shorts v. AT&T Mobility*,
  2013 WL 2995944 (W. Va. June 17, 2013) ............................ 46, 49, 50

*State ex rel. AT&T Mobility v. Wilson*,
  703 S.E.2d 543 (W. Va. 2010) ............................................................ 46

*State ex rel. Dunlap v. Berger*,
  567 S.E.2d 265 (W. Va. 2002) ............................................................ 45

*State ex rel. Ocwen Loan Servicing, LLC v. Webster*,
  752 S.E.2d 372 (W. Va. 2013) ................................................... *passim*

*State ex rel. Richmond Am. Homes of W. Va., Inc. v. Sanders*,
  717 S.E.2d 909 (W. Va. 2011) ...................................................... 50, 51

*Sydnor v. Conseco Fin. Servicing Corp.*,
  252 F.3d 302 (4th Cir. 2001) ............................................................. 24

*Thomas v. Cricket Wireless, LLC*,
  2020 WL 7260532, (N.D. Cal. Dec. 10, 2020) ............................. 20, 56

*United States ex rel. TBI Invs., Inc. v. BrooAlexa, LLC*,
  119 F. Supp. 3d 512 (S.D. W. Va. 2015) ............................................ 44

*United States v. Bell*,
  5 F.3d 64 (4th Cir. 1993) .................................................................... 36

*United States v. Husband*,
  312 F.3d 247 (7th Cir. 2002) ............................................................. 36

*United States v. Morris*,
  259 F.3d 894 (7th Cir. 2001) ............................................................. 25

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*United States v. Pileggi,*
   703 F.3d 675 (4th Cir. 2013)..............................................36

*Wachovia Sec., LLC v. Brand,*
   671 F.3d 472 (4th Cir. 2012)..............................................26

*W. Sur. Co. v. Rock Branch Mech., Inc.,*
   2017 WL 5075253 (S.D. W. Va. Nov. 3, 2017)........................28

*Wexler v. AT&T Corp.,*
   211 F. Supp. 3d 500 (E.D.N.Y. 2016)...........................*passim*

*Wiseley v. Amazon.com, Inc.,*
   709 F. App'x 862 (9th Cir. 2017)..........................................44

**Statutes and Rules**

Federal Arbitration Act
   9 U.S.C. §§ 1-16.................................................................2
   9 U.S.C. § 2........................................................................20
   9 U.S.C. § 16(a)(1).............................................................5

28 U.S.C. § 1331..................................................................4

28 U.S.C. § 1332(d)..............................................................4

47 U.S.C. § 227.....................................................................4

Fed. R. Civ. P. 11(b).............................................................9

**Other Authorities**

*AT&T U-verse Timeline,*
   https://www.att.com/Common/merger/files/pdf/U-verse%
   20Timeline41907.pdf ........................................................40

## INTRODUCTION

This is the second appeal from orders of the district court refusing to enforce an arbitration agreement that plaintiff Diana Mey signed when obtaining wireless services from AT&T Mobility LLC for the AT&T cell phone number at issue in her complaint. Under that agreement, Mey agreed to arbitrate "all disputes and claims" against AT&T Mobility *and* its "affiliates"—which, as this Court has already held, includes defendant-appellant DIRECTV, LLC. *See Mey v. DIRECTV, LLC*, 971 F.3d 284, 289 (4th Cir. 2020) (*Mey I*). Despite the provision's clear language, the district court on remand once again refused to enforce it—this time under the guise of unconscionability.

In again refusing to enforce Mey's arbitration agreement, the district court erred at every step and disregarded the proper relationship between trial and appellate courts.

The district court abused its discretion when it held that Mey did not waive her argument that the arbitration provision is unconscionable. Mey failed to so much as mention unconscionability—much less argue it—in her initial briefing before both the district court and this Court in the first appeal. One of the principal purposes of the

1

Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, is "encourag[ing] * * * efficient and speedy dispute resolution." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345 (2011) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). Permitting plaintiffs to raise seriatim objections to the enforceability of their arbitration agreements is antithetical to that goal. And Mey offered no compelling explanation for her failure to raise the argument sooner. In fact, the law on which she relied on remand was available to her more than three years ago when DIRECTV filed its motion to compel arbitration.

On the merits, the district court's unconscionability determination is irreconcilable with—indeed, overtly disagrees with—this Court's reasoning in *Mey I*. The district court was not writing on a clean slate. Yet the only thing that the court said about the majority's analysis in *Mey I* is that the court should reconsider it. JA249. Instead of faithfully applying the majority's analysis and reasoning, the district court treated Judge Harris's *dissent* as if it governed and relied heavily on a few other decisions that expressly disagree with this Court's opinion. JA236, 238-239, 242-245. For instance, citing a parade of horribles embraced by the dissent in *Mey I* and inapposite California and New

York decisions, the district court concluded that the arbitration provision was "absurd"—a characterization employed in Judge Harris's dissent—because customers would not expect the agreement to require arbitration of a broad range of claims. But this Court already rejected the district court's prior attempt to analyze the agreement by resort to "troubling hypothetical scenarios" that are not tethered to the facts of the underlying dispute. Rather than acknowledge that rejection of its reasoning and use that as the starting point for its analysis, the district court adhered to its prior reasoning on remand and even suggested that this Court reconsider its opinion in light of Judge Harris's dissent and the out-of-circuit decisions that disagree with the majority's opinion. JA249. In short, the district court failed to adhere to the letter and spirit of this Court's opinion, thereby running afoul of the law-of-the-case doctrine.

Beyond deviating from the warp and woof of this Court's opinion, the district court misapplied West Virginia unconscionability law. That law requires the plaintiff to establish the existence of both procedural and substantive unconscionability. Yet neither is present here—much less both. In addition, the district court's unconscionability

determination is preempted by the FAA, because it rests on the false premise that arbitration is an inferior form of dispute resolution. *See Concepcion*, 563 U.S. at 339-40. The district court's reasoning thus conflicts with this Court's holding that "the generally applicable contract defense of unconscionability may not be applied in a manner that targets the existence of an agreement to arbitrate as the basis for invalidating that agreement." *Muriithi v. Shuttle Express, Inc.*, 712 F.3d 173, 180 (4th Cir. 2013).

In sum, the district court's second denial of arbitration cannot be squared with this Court's earlier opinion, West Virginia law, the FAA, or the Supreme Court's FAA precedents. The decision below should be reversed.

## JURISDICTIONAL STATEMENT

Mey asserts claims under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. JA220-221. Accordingly, the district court had federal question jurisdiction under 28 U.S.C. § 1331. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012). The district court also had jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d): Mey seeks over $5 million in statutory damages for

4

the putative class and at least one putative class member is a citizen of a state different from any defendant. JA218-220.

This Court has appellate jurisdiction. DIRECTV moved to compel arbitration and to stay the claims against it; on remand from this Court, the district court entertained further briefing on the motion, and the district court again denied the motion. This Court has jurisdiction over this appeal under Section 16(a) of the FAA, which provides that "[a]n appeal may be taken from * * * an order * * * refusing a stay" pending arbitration or "denying" a motion to compel arbitration. 9 U.S.C. § 16(a)(1)(A)-(B).

## STATEMENT OF ISSUES

1.    Whether the district court abused its discretion in determining that Mey had not waived her unconscionability argument.

2.    Whether the district court erred in concluding that Mey's arbitration agreement is unconscionable.

## STATEMENT OF THE CASE

### A.    Mey Agrees To Arbitrate Her Disputes With AT&T Mobility And Its Affiliates.

AT&T's records show that Mey and her husband have been customers of AT&T Mobility since 2006. JA19. AT&T's records show

that on March 16, 2012, at an AT&T retail store, Mey activated the
number referenced in the complaint as "Ms. Mey's cellular telephone
line" (JA191) for AT&T cell phone service. JA19-20.

During that transaction, Mey was presented with an electronic
signature-capture device that displayed the entire AT&T Wireless
Customer Agreement, enabling her to read through the entire document
electronically or to print it by pressing an on-screen "Print" button.
JA145. After she pressed the on-screen "Accept" button, Mey signed her
name under the following acknowledgment: "I have reviewed and agree
to the rates, terms, and conditions for the wireless products and
services described in the Wireless Customer Agreement (including
limitation of liability and arbitration provisions) and the Customer
Service Summary, both of which were made available to me prior to my
signing." JA34, 145, 150. The Agreement provided that Mey
"consent[ed] to the use by us or our authorized agents of regular mail,
predictive or autodialing equipment, email, text messaging, facsimile or
other reasonable means to contact you to advise you about our Services
or other matters we believe may be of interest to you." JA46.

At all relevant times, including in March 2012, the second paragraph of AT&T's Wireless Customer Agreement emphasized that it contains an arbitration provision. Specifically, that paragraph states in bold, capital letters that "**THIS AGREEMENT REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES, RATHER THAN JURY TRIALS OR CLASS ACTIONS**." JA42. The arbitration provision itself states that "AT&T and you agree to arbitrate **all disputes and claims** between us," which "includes, but is not limited to," "claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory," as well as "claims that arose before this or any prior Agreement (including, but not limited to, claims relating to advertising)." JA50.

The arbitration provision also specifies that "[r]eferences to 'AT&T,' 'you,' and 'us' include our respective subsidiaries, affiliates, agents, employees, predecessors in interest, successors, and assigns, as well as all authorized or unauthorized users or beneficiaries of services or Devices under this or prior Agreements between us." JA50. Finally, the provision reminds the customer: "**You agree that, by entering**

into this Agreement, you and AT&T are each waiving the right
to a trial by jury or to participate in a class action." JA50.

### B. AT&T's Arbitration Provision Contains Consumer-Friendly And Cost-Effective Features Recognized By The U.S. Supreme Court.

AT&T's arbitration provision includes several features that ensure
that customers have a simple and efficient means of resolving any
disputes that may arise. For that reason, the U.S. Supreme Court has
recognized, in describing a materially identical version of AT&T's
arbitration provision, that customers are "*better off* under their
arbitration agreement with AT&T than they would" be "as participants
in a class action." *Concepcion*, 563 U.S. at 352. The features of the
version of AT&T's arbitration provision to which Mey agreed include the
following:

- **Cost-free arbitration:** For claims up to $75,000, "AT&T will
  pay all [American Arbitration Association ("AAA")] filing,
  administration, and arbitrator fees" unless the arbitrator
  determines the customer's claim "is frivolous or brought for an

improper purpose (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b))."[1]

- **$10,000 minimum award:** If the arbitrator issues an award in favor of a customer that is greater than "AT&T's last written settlement offer made before an arbitrator was selected," then AT&T will pay the customer $10,000 rather than any smaller arbitral award.

- **Double attorneys' fees:** If the arbitrator awards the customer more than "AT&T's last written settlement offer made before an arbitrator was selected," then "AT&T will * * * pay [the customer's] attorney, if any, twice the amount of attorneys' fees, and reimburse any expenses (including expert witness fees and costs), that [the] attorney reasonably accrues for investigating, preparing, and pursuing [the] claim in arbitration."[2]

---

[1]    Even if an arbitrator concludes that a customer's claim is frivolous, the arbitration provision would cap the amount of costs the customer would have to pay at $200, the amount the consumer is responsible for under the AAA's consumer arbitration rules. *See* JA51; Dkt. No. 15-1, at 36-37 (AAA Consumer Arbitration Rules fee schedule).

[2]    The provision for double attorneys' fees "supplements any right to attorneys' fees and expenses [the customer] may have under applicable law." JA51. Thus, even if an arbitrator were to award a customer less than the company's last settlement offer, the customer would be entitled

9

- **Small claims court option:** Either party may bring a claim in small claims court as an alternative to arbitration.

- **Flexible consumer procedures**: Arbitration will be conducted under the AAA's Consumer Arbitration Rules, which the AAA designed with consumers in mind;[3]

- **Choice of in-person, telephonic, or no hearing:** For claims of $10,000 or less, the customer has the exclusive right to choose whether the arbitrator will conduct an in-person hearing, a telephonic hearing, or a "desk" arbitration in which "the arbitration will be conducted solely on the basis of documents submitted to the arbitrator."

- **Conveniently located hearing:** Arbitration will take place "in the county (or parish) of [the customer's] billing address."

---

to an attorneys' fees award to the same extent as if his or her individual claim had been brought in court.

[3]     The arbitration provision references the AAA's Commercial Arbitration Rules and Supplementary Procedures for Consumer-Related Disputes. JA51. But in September 2014, the AAA replaced those rules for administering consumer disputes with its new Consumer Arbitration Rules. Dkt. No. 15-1, at 49. The AAA applies the Consumer Arbitration Rules "whenever" an agreement has "provided for arbitration by the American Arbitration Association ('AAA'), and" the agreement has "specifie[d] that the *Supplementary Procedures for Consumer-Related Disputes* shall apply." Dkt. No. 15-1, at 12.

- **AT&T disclaims right to seek attorneys' fees:** "Although under some laws AT&T may have a right to an award of attorneys' fees and expenses if it prevails in an arbitration, AT&T agrees that it will not seek such an award."

- **No confidentiality requirement:** Either party may publicly disclose the arbitration and its result.

- **Full individual remedies available:** The arbitrator can award any form of relief on an individualized basis (including statutory and punitive damages, attorneys' fees, and injunctions that would affect the claimant alone) that a court could award.

- **Right to a written decision:** "Regardless of the manner in which the arbitration is conducted, the arbitrator shall issue a reasoned written decision sufficient to explain the essential findings and conclusions on which the award is based."

JA50-52.

## C. Mey Sues DIRECTV Notwithstanding Her Arbitration Agreement.

Mey filed this putative class action in December 2017. Dkt. No. 1. In her operative Third Amended Complaint, she alleges that other

11

entities placed telemarketing calls to her without her consent even though her number is listed on the National Do Not Call Registry. JA191. According to Mey, those calls gave "a scripted pitch for DIRECTV goods and services." JA191. She seeks to hold DIRECTV vicariously liable for those calls. JA216. To that end, Mey has asserted three counts under the TCPA on behalf of herself and three different proposed classes, seeking both statutory damages and injunctive relief. JA218-222.[4]

In February 2018, DIRECTV moved to compel arbitration of Mey's claims under the arbitration provision in her agreement with AT&T. Dkt. No. 15. The district court denied DIRECTV's motion in April 2018, holding that the provision was not broad enough to encompass Mey's claims and that giving effect to the plain language of the provision would be "absurd." JA178, 181. The court also opined that the arbitration provision "would be unconscionably overbroad" unless limited to disputes "arising under or relating to the provision of cellular telephone service." JA181.

---

[4]   Since filing this lawsuit, Mey has been joined by several other plaintiffs. Those plaintiffs' claims are not at issue in this appeal.

### D.    This Court Holds That Mey Agreed To Arbitrate Her TCPA Claims Against DIRECTV.

In August 2020, this Court reversed the district court's order. *Mey I*, 971 F.3d at 286. The Court first determined that, by signing her name on the in-store signature-capture device, Mey had agreed to AT&T's arbitration provision. *Id*. at 288-89. The Court also observed that DIRECTV is currently an affiliate of AT&T and has been since 2015. *Id*.

Moving on to the scope of the arbitration provision, the Court analyzed whether, by agreeing to arbitrate "all disputes and claims" between herself and any of AT&T's "affiliates," Mey had agreed to arbitrate her TCPA claims against DIRECTV, an entity that was not yet an affiliate at the time that Mey signed the Agreement. *Mey I*, 971 F.3d at 290. For several reasons, the Court concluded that she had.

*First*, the Court held that nothing in the text of the Agreement limited "affiliates" to "affiliates existing at the time the contract was signed." *Mey I*, 971 F.3d at 290. "To the contrary," the term's context demonstrates that "affiliates" should be forward-looking. *Id*. at 290-91. For instance, the arbitration provision contains other forward-looking provisions: It provides that it "survive[s]" and covers "claims that may arise after" the Agreement's "termination." *Id*. (quotation marks

13

omitted). Along with "affiliates," the arbitration provision lists "successors" and "assigns," entities that necessarily "cannot be known until some point in the future." *Id.* at 291. And "subsidiaries," "agents," and "employees"—terms that are also listed alongside "affiliates"—are all "subject to change over" time. *Id.* The Court observed, for example, that the provision would plainly encompass claims that Mey might bring against AT&T employees who had not yet been hired at the time that Mey signed the Agreement. *Id.* In the same way, the Agreement must cover claims against affiliates that had not yet been acquired. *Id.*

*Second*, the Court recognized that the FAA's "federal policy favoring arbitration" mandates that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mey I*, 971 F.3d at 292 (quotation marks omitted). Accordingly, the Court framed the question before it as "whether the arbitration agreement is susceptible of an interpretation that covers the asserted dispute." *Id.* (quotation marks omitted).

*Third*, the Court then answered that question in the affirmative. It pointed out that the arbitration provision, by its own terms, "broad[ly]" covers "all disputes and claims." *Mey I*, 971 F.3d at 293. This

language is "expansive" and "explicitly contemplate[s] that [the arbitration agreement] covers claims beyond those 'arising out of or relating to' the underlying contract." *Id*. In fact, "the arbitration agreement itself tells us that the parties intended it to be broadly interpreted." *Id*. at 294 (quotation marks omitted).

The Court further concluded that its holding was bolstered by "the more specific terms of the arbitration agreement." *Mey I*, 971 F.3d at 293-94. These included "claims relating to advertising," claims "based in * * * statute," and "claims arising out of or relating to any aspect of the relationship between us." *Id*. at 294 (quotation marks omitted). This list "convince[d]" the Court that Mey's TCPA claims are included, especially because the Agreement elsewhere states that Mey "consent[ed] to the use by us or our authorized agents of regular mail, predictive or autodialing equipment, * * * or other reasonable means to contact you to advise you about our Services or *other matters we believe may be of interest to you*." *Id*. at 294 (quotation marks omitted). "One 'aspect of the relationship' between Mey and AT&T Mobility and its affiliates * * * is communication about matters of interest other than AT&T's services,

such as advertising affiliates' products and services"—which is what happened here. *Id.*

*Finally*, the Court acknowledged "that construing the broadest language of this arbitration agreement *in the abstract* could lead to troubling *hypothetical* scenarios." *Mey I*, 971 F.3d at 294 (emphasis added). It cited *Wexler v. AT&T Corp.*, 211 F. Supp. 3d 500 (E.D.N.Y. 2016), which the district court had relied upon for the conclusion that broadly interpreting the arbitration provision would lead to "absurd" results. *Mey I*, 971 F.3d at 294. But the Court rejected *Wexler*'s reliance on hypotheticals, explaining that "the question before us today is not abstract; it is tethered to the facts of this dispute and the categories of claims specifically included in this arbitration agreement." *Id.* (citing *Parm v. Bluestem Brands, Inc.*, 898 F.3d 869, 878 (8th Cir. 2018)). The Court thus firmly repudiated using hypotheticals—as opposed to the actual facts of the case—to evaluate the enforceability of Mey's arbitration agreement.

In closing, this Court noted that the district court had "opined in passing" that if the arbitration provision reached Mey's claim, it would be "unconscionably overbroad." *Mey I*, 971 F.3d at 295 (quotation marks

16

omitted). Acknowledging DIRECTV's arguments that Mey had waived any unconscionability argument by failing to raise it below and that "the agreement is neither procedurally nor substantively unconscionable," the Court left both waiver and the underlying unconscionability issue "for the parties and the district court to address on remand." *Id.*

Judge Harris dissented. She would have "affirm[ed] the decision of the district court on the threshold question of contract formation" on the ground that "Mey never entered into an agreement to arbitrate her claims against DIRECTV." *Mey I*, 971 F.3d at 296 (Harris, J., dissenting). Like the district court, Judge Harris believed that it would be "absurd" to interpret the word "'affiliate'" in the arbitration agreement "to cover entities like DIRECTV." *Id.* at 301.

### E. On Remand, The District Court Relies On Judge Harris's Dissent And Out-Of-Circuit Case Law To Hold That The Arbitration Agreement Is Unconscionable.

On remand, the district court again decided not to enforce the arbitration provision. JA249. In a single page of analysis, the court ruled that Mey had not waived her unconscionability argument by failing to raise it until after the case returned to the district court.

JA226. The Court did not mention DIRECTV's argument that allowing Mey to take serial bites at the apple is irreconcilable with the policies underlying the FAA.

The court then turned to unconscionability. It first devoted several pages to critiquing broad arbitration clauses in general, largely borrowing from a law review article on the topic. JA227-229. Next, the court recognized that West Virginia law requires a showing of both procedural and substantive unconscionability, and it concluded that both requirements were satisfied here. JA230, 233, 235.

The court held that AT&T's arbitration provision is procedurally unconscionable because it is in a contract of adhesion. JA233-235. Although the district court recognized that under West Virginia law "[f]inding that there is an adhesion contract is the beginning for analysis, not the end of it" (*State ex rel. Ocwen Loan Servicing, LLC v. Webster*, 752 S.E.2d 372, 389 (W. Va. 2013) (quotation marks omitted)), the district court said little else about procedural unconscionability. JA232. It asserted that AT&T and Mey had unequal bargaining power and that Mey could not negotiate out of the arbitration provision— restating the elements of a contract of adhesion. JA234. The court

18

further surmised that Mey "[t]heoretically" could have refused the offered opportunity to read the Agreement in full, and skipped directly to the signature screen, where she would have signed her name under an "acknowledgment indicating that * * * the Wireless Customer Agreement * * * includ[es] * * * arbitration provisions." JA234.

Regarding substantive unconscionability, the district court's opinion relied heavily on Judge Harris's dissent in *Mey I*; extended block quotations from *Wexler*; and the Ninth Circuit's recent decision in *Revitch v. DIRECTV, LLC*, 977 F.3d 713 (9th Cir. 2020), which expressly disagrees with this Court's decision in *Mey I*. JA236-239, 242-245. Based on these sources, the district court determined that no reasonable person would have expected AT&T's arbitration provision to cover Mey's claim. JA235-239, 242-245. The district court also relied on hypothetical scenarios, rather than Mey's actual claims, to support its conclusion that enforcing the arbitration provision would be "absurd." JA238-239, 242-242, 245, 249.

Next, quoting another district-court decision at length, the court deemed *Concepcion* irrelevant because it addressed class-action waivers, not the provision's scope, and insisted that "[t]he general

19

doctrine of unconscionability, unlike the arbitration-specific rule in

[*Concepcion*], does not derive its meaning from the fact that an

agreement to arbitrate is at issue." JA248-249 (quoting *Thomas v.*

*Cricket Wireless, LLC*, 2020 WL 7260532, at *10-11 (N.D. Cal. Dec. 10,

2020), *appeal pending*, No. 21-15055 (9th Cir. filed Jan. 11, 2021)).

The district court concluded its opinion much like it began it—by

casting its lot with the dissent in *Mey I*: "In light of the recent decisions

in *Revitch* [from the Ninth Circuit] and *Thomas* [from the Northern

District of California] and in light of the limitations of § 2 of the FAA

and Judge Harris' excellent dissent, the undersigned would respectfully

urge that the Fourth Circuit should revisit its prior decision." JA249.

## SUMMARY OF ARGUMENT

The district court erred in refusing to enforce Mey's arbitration

agreement for a second time.

As an initial matter, the district court abused its discretion in

holding that Mey did not waive her unconscionability argument by

failing to raise it in 2018, when originally briefing the motion to compel

arbitration in the district court. The court's holding that waiver does not

apply to appellees across the board is erroneous as a matter of law. And

the court failed to address how Mey's seriatim objections to arbitration could be squared with the FAA's goal of "efficient and speedy dispute resolution." *Concepcion*, 563 U.S. at 345 (quotation marks omitted).

For several reasons, the district court also committed reversible error on the merits of its unconscionability analysis.

*First*, the district court's opinion fails to faithfully apply this Court's decision in *Mey I* and, in doing so, contravenes the law-of-the-case doctrine. *See L.J. v. Wilbon*, 633 F.3d 297, 308 (4th Cir. 2011). In *Mey I*, this Court held that courts should evaluate arbitration provisions in light of the particular claims before the Court. This Court expressly held that it is improper to rely on far-flung hypotheticals when evaluating the enforceability of an arbitration agreement. *See Mey I*, 971 F.3d at 294-95. But the district court did just that on remand. *See* JA238-239, 242-242, 245, 249. In addition, this Court held that applying the arbitration provision to Mey's TCPA claim was *not* absurd, which should have precluded the district court's determination on remand that it was. *See Mey I*, 971 F.3d at 294-95.

*Second*, the district court's conclusion that the arbitration provision is unconscionable was incorrect under West Virginia law. West

Virginia law requires a finding of *both* procedural and substantive unconscionability before a court may refuse to enforce a contract. *Credit Acceptance Corp. v. Front*, 745 S.E.2d 556, 564-66 (W. Va. 2013). But the district court decided that the provision is procedurally unconscionable solely because it was in a form contract offered at the point of sale. This holding contradicts West Virginia law, which requires something more than non-negotiability before a form contract will be deemed procedurally unconscionable. *Ocwen Loan Servicing*, 752 S.E.2d at 388-89.

As for substantive unconscionability, the district court failed to analyze whether the arbitration provision is egregiously "one-sided" or overly "harsh," as required by West Virginia law. *McFarland v. Wells Fargo Bank, N.A.*, 810 F.3d 273, 279 (4th Cir. 2016) (quotation marks omitted). Indeed, the district court did not even mention the many pro-consumer features in AT&T's arbitration provision, which include a potential minimum award of $10,000 and the opportunity to obtain twice the amount of attorneys' fees incurred by the consumer. In fact, the Supreme Court has upheld a materially identical version of the arbitration provision at issue here, noting that because of its pro-

22

consumer features, AT&T's customers are "*better off* under their arbitration with AT&T than they would have been as participants in a class action." *Concepcion*, 563 U.S. at 352.

The district court instead invoked a parade of horribles to justify its conclusion that the arbitration provision is "absurd[ly]" broad. That ruling contradicts this Court's instruction to focus on whether it is absurd to require Mey to arbitrate *her* actual claims, not whether the arbitration of someone else's hypothetical claims would be absurd. *Mey I*, 971 F.3d at 294-95. And it conflicts with this Court's prior holding that applying the arbitration provision to Mey's TCPA claims against DIRECTV is not "absurd." *Id.*

*Third*, the FAA preempts the district court's application of West Virginia's unconscionability doctrine. The district court's unconscionability determination rests on the assumption that arbitration is an inferior forum for resolving disputes. But that is the very proposition that the Supreme Court has repeatedly rejected as contrary to the FAA, which Congress enacted to overcome judicial suspicion of arbitration agreements.

## STANDARD OF REVIEW

The district court's determination that Mey did not waive her unconscionability argument is reviewed for abuse of discretion. *See Mclean Contracting Co. v. Waterman S.S. Corp.*, 277 F.3d 477, 479-80 (4th Cir. 2002); *see also Brown v. City of New York*, 862 F.3d 182, 187 (2d Cir. 2017). This Court "review[s] a district court's denial of a motion to compel arbitration *de novo.*" *Sydnor v. Conseco Fin. Servicing Corp.*, 252 F.3d 302, 304-05 (4th Cir. 2001); *accord Dillon v. BMO Harris Bank, N.A.*, 787 F.3d 707, 714 (4th Cir. 2015).

## ARGUMENT

## I.    Mey Has Waived Her Argument That The Arbitration Provision Is Unconscionable.

### A.    Mey's Failure To Raise Unconscionability In The Initial District-Court Proceedings And In The First Appeal Constitutes A Waiver.

Mey waived any unconscionability challenge to her arbitration agreement by failing to advance it in 2018 in response to DIRECTV's original motion to compel arbitration.

A party "who lost on appeal" may not "advance different, previously available theories" on remand. *Omni Outdoor Advert., Inc. v. Columbia Outdoor Advert., Inc.*, 974 F.2d 502, 505 (4th Cir. 1992). This

24

is because "parties cannot use the accident of remand as an opportunity to reopen waived issues." *United States v. Morris*, 259 F.3d 894, 898 (7th Cir. 2001). As the First Circuit has put it, "[w]hen a party could have raised an argument in his initial appeal, and failed to do so, he has generally waived his right to raise that argument on remand or on appeal from remand." *Labor Relations Div. of Constr. Indus. of Mass., Inc. v. Teamsters Local 379*, 156 F.3d 13, 17 (1st Cir. 1998) (collecting cases); *accord Fiberlink Commc'ns Corp. v. Magarity*, 72 F. App'x 22, 24 (4th Cir. 2003) (affirming district court's determination that plaintiff "was precluded from raising his new argument that no statute of limitations applied" for the first time on remand, because he had not shown that the argument was "unavailable to him on his initial appeal"); *Nw. Ind. Tel. Co. v. FCC*, 872 F.2d 465, 470-71 (D.C. Cir. 1989) ("It is elementary that where an argument could have been raised on an initial appeal, it is inappropriate to consider that argument on a second appeal following remand.").

The requirement that "litigants present all available arguments" regarding an issue in the original proceedings serves both "rudimentary procedural efficiency" and "fairness" interests. *Omni*, 974 F.2d at 505.

Unnecessarily piecemeal litigation delays "final resolution" of a case and "swell[s]" "already crowded court dockets." *Id.* It is also "not fair for an adversary to have to defend the same lawsuit on appeal over and over." *Id.*; *Nw. Ind. Tel. Co.*, 872 F.2d at 470 (regarding waiver, "[t]his widely-accepted rule furthers the important value of procedural efficiency").

These efficiency and fairness interests are especially important in the context of arbitrability issues because one of the principal purposes of the FAA is "encourag[ing] * * * efficient and speedy dispute resolution." *Concepcion*, 563 U.S. at 345 (quoting *Dean Witter Reynolds, Inc.*, 470 U.S. at 221); *see Wachovia Sec., LLC v. Brand*, 671 F.3d 472, 478 n.5 (4th Cir. 2012) (recognizing that arbitration must remain an "efficient alternative to litigation"); *Hightower v. GMRI, Inc.*, 272 F.3d 239, 241-42 (4th Cir. 2001) ("Congress endorsed arbitration as a less formal and more efficient means of resolving disputes than litigation.").

The Eleventh Circuit has recognized the special importance of avoiding piecemeal arguments about arbitration. Following a first appeal in which the Eleventh Circuit reversed an order refusing to compel arbitration on unconscionability grounds, the defendant argued

for the first time on remand that arbitrability questions should be delegated to the arbitrator. *In re Checking Account Overdraft Litig.*, 754 F.3d 1290, 1292 (11th Cir. 2014). The district court agreed and granted the motion to compel arbitration. *Id.* In a second appeal, the Eleventh Circuit vacated the decision. *Id.* at 1298. The court held that "[a]t the outset" of the case the defendant "had every chance" to raise the delegation issue. *Id.* at 1296. By failing to do so, the defendant waived that "threshold question of arbitrability." *Id.* at 1298. Invoking fairness and efficiency interests like those identified by this Court in *Omni*, the Eleventh Circuit reasoned that the very "objective of an agreement to arbitrate is to achieve 'streamlined proceedings and expeditious results.'" *Id.* at 1295 (quoting *Preston v. Ferrer*, 552 U.S. 346, 357 (2008)). Forcing a litigant to take "two trips around the pretrial-motion-and-appeal carousel" necessarily conflicts with that objective "[b]y slowing the process and magnifying [the opposing party's] costs," which in turn "undermine[s] the purpose of the Federal Arbitration Act[]." *Id.* at 1296 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

27

The same logic applies here. West Virginia law is clear that, as the party opposing arbitration, Mey bore the burden of proving that her agreement to arbitrate was unconscionable. *W. Sur. Co. v. Rock Branch Mech., Inc.*, 2017 WL 5075253, at *5 (S.D. W. Va. Nov. 3, 2017) (citing *Nationstar Mortg., LLC v. West*, 785 S.E.2d 634, 638 (W. Va. 2016)). Yet she did not make an unconscionability argument at all when opposing DIRECTV's original motion to compel arbitration. Such an argument was available to her—the West Virginia authorities she relied on in the district court on remand were decided prior to 2018. *See generally* Dkt. No. 185. She even asserted in her recent district-court briefing, when arguing that DIRECTV should not have been surprised by her unconscionability argument, that the argument should have been "obvious" to the parties back in 2018. *Id.* at 22. That admission is fatal.

In fact, Mey had already waived the unconscionability argument by the time the parties completed briefing the motion to compel arbitration. In "the absence of exceptional circumstances, * * * nonjurisdictional arguments not made to the district court are waived on appeal." *Laber v. Harvey*, 438 F.3d 404, 429 (4th Cir. 2006) (appellee waived argument raised for the first time on appeal) (internal footnote

omitted); *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 201 n.23 (4th Cir. 2017) (explaining that an argument "raise[d] * * * for the first time on appeal * * * is therefore waived"); *In re Jones*, 397 B.R. 775, 790-91 (S.D. W. Va. 2008) (new argument advanced by plaintiff-appellees "for the first time on appeal" was "waived"), *aff'd*, 591 F.3d 308 (4th Cir. 2010).

Mey has not shown any "exceptional circumstances" that could excuse her failure to raise the unconscionability issue in the district court back in 2018. And her failure to raise the issue in the first appeal further confirms her waiver. Even after the district court alluded to the issue *sua sponte* in its first order (JA181) and DIRECTV devoted four pages to the issue in its opening brief on appeal (DIRECTV Br. at 31-35, *Mey I* (No. 18-1534), ECF No. 17), Mey did not so much as mention the unconscionability issue in her answering brief.

When a party has offered no "explanation (beyond inadvertence) for the failure to properly present [an] issue[] in the initial [proceedings and] appeal" (*Nw. Ind. Tel. Co.*, 872 F.2d at 470), courts have consistently rejected "belated[]" attempts to raise previously available arguments on remand (*Omni*, 974 F.2d at 506). Especially in light of the

29

special concerns for efficiency underlying the FAA, the district court
should have as well.

Moreover, DIRECTV has suffered obvious prejudice as a result of
Mey's piecemeal approach to resisting arbitration. Because the "prime
objective" of arbitration is expediency, a party forced to litigate seriatim
objections to the enforcement of an arbitration agreement necessarily
suffers prejudice by "undergo[ing] the [very] type[] of litigation expenses
that arbitration was designed to alleviate." *In re Checking Account
Overdraft Litig.*, 754 F.3d at 1294-95 (quoting *Morewitz v. W. of
England Ship Owners Mut. Prot. & Indem. Ass'n (Luxembourg)*, 62 F.3d
1356, 1366 (11th Cir. 1995)). At this point, DIRECTV has been litigating
the arbitrability of Mey's claims for more than three years.

Finally, nothing in *Mey I* precludes this Court from holding that
Mey waived her unconscionability objection. The Court simply noted
DIRECTV's argument "that Mey waived any unconscionability
challenge to the arbitration agreement by failing to raise it in the
district court," as well as DIRECTV's contention "that the agreement is
neither procedurally nor substantively unconscionable." *Mey I*, 971 F.3d
at 295. The Court left *both* issues—"waiver" and "unconscionability

under West Virginia law"—for "the parties and the district court to address on remand." *Id.*

In sum, Mey's choice not to raise unconscionability as an objection to arbitration the first time around should have consequences.

## B.    The District Court's Contrary Conclusion Was An Abuse Of Discretion.

The district court gave short shrift to the waiver argument, devoting only a single page to it and failing to meaningfully engage with any of the points raised above. JA226. District courts abuse their discretion when they fail "to take relevant factors into account or act[] on the basis of legal or factual misapprehensions respecting those factors." *James v. Jacobson*, 6 F.3d 233, 242 (4th Cir. 1993).

The district court committed both missteps here. The court asserted that "the doctrine of forfeiture" exists to "ensure that parties cannot spring unexpected arguments on one another, long into discovery or on the eve of trial, to one another's disadvantage." JA226. But waiver is not limited to circumstances related to discovery or trial—as the authorities above conclusively demonstrate. In addition, the district court failed to consider the need for courts to resolve questions of arbitrability efficiently, consistent with the FAA's purpose. And it failed

31

to address DIRECTV's arguments that it has been disadvantaged by Mey's belated assertion of unconscionability.

The district court also was wrong as a matter of law in asserting that the waiver "principle does not extend to appellees." JA226. Neither of its cited authorities—*Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735 (D.C. Cir. 1995); and *Kessler v. National Enterprises, Inc.*, 203 F.3d 1058 (8th Cir. 2000)—supports that assertion. Both involved appellees that *did* raise the issue in question in the district court in the first instance; the cases stand only for the proposition that an appellee need not always file a cross-appeal or raise the issue on appeal as an alternative ground for affirmance in order to preserve it.

The circumstances in *Kessler* are inapposite to the district court's no-waiver conclusion. To begin with, the Eighth Circuit determined that the appellee in that case *had* waived the argument in question. 203 F.3d at 1060. The defendant in *Kessler* filed a complaint against a third party, but the district court dismissed the third-party complaint. The defendant later prevailed at summary judgment, and the plaintiffs appealed. In that first appeal, the defendant did not cross-appeal the earlier dismissal of its third-party complaint. *Id.* at 1059. Two years

32

later, in a second appeal filed by the plaintiffs, the defendant sought to cross-appeal the dismissal order. *Id.* That was too late, the Eighth Circuit explained, because "where an argument could have been raised on an initial appeal, it is inappropriate to consider that argument on a second appeal following remand." *Id.* (quotation marks omitted).

Accordingly, *Kessler* fails to support the district court's conclusion here for two reasons. First, the appellee, unlike Mey, did raise the argument in the district court in the first instance; and second, the Eighth Circuit recognized that appellees, as much as appellants, may waive legal arguments by failing to raise them in a timely fashion.

*Crocker* is similarly inapposite. The defendant in that case raised a statute-of-limitations argument in the district court. The district court rejected that argument but later granted summary judgment for the defendant on other grounds. 49 F.3d at 738. The plaintiff appealed, and the defendant did not raise the statute-of-limitations argument as an alternative basis for affirmance. *Id.* The D.C. Circuit reversed, and after trial the defendant appealed the judgment against it, raising, among other arguments, the statute-of-limitations issue. *Id.* The D.C. Circuit concluded that there was no waiver, because "forcing appellees to put

33

forth every conceivable alternative ground for affirmance might increase the complexity and scope of appeals more than it would streamline the process of the litigation." *Id.* at 740. Crucially, however, the court reiterated that the defendant "initially raised this argument in the trial court." *Id.* at 739. Mey did not do so here.

In sum, the district court abused its discretion in permitting Mey to raise unconscionability for the first time on remand.

## II.    The Arbitration Agreement Is Not Unconscionable.

If the Court reaches the unconscionability issue, the district court's order should be reversed, for at least three reasons.

*First*, the district court's failure to apply the reasoning of this Court's opinion in *Mey I* is itself reversible error. *Second*, AT&T's arbitration provision is neither procedurally nor substantively unconscionable under West Virginia law. *Third*, the district court's application of unconscionability doctrine is preempted by the FAA.

### A.    The District Court's Unconscionability Analysis Is Irreconcilable With This Court's Opinion In *Mey I*.

In its opinion in *Mey I*, this Court expressly reserved judgment on the unconscionability of AT&T's arbitration provision. *Mey I*, 971 F.3d at

295. Accordingly, there is no dispute that the district court was permitted on remand to address that question.

But the district court was not permitted to disregard this Court's ruling—which is just what it did. Under the guise of an unconscionability analysis, the district court re-packaged the reasoning that this Court had just overturned; adopted the rejected views of the dissent and the contrary decisions in *Revitch*, *Wexler*, and *Thomas*; ignored this Court's determination that enforcing the arbitration provision with respect to Mey's TCPA claims is not "absurd"; and encouraged this Court to "revisit its prior decision." JA249. Trial courts are not free to disregard this Court's precedents in that manner. *Cf. DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 53 (2015) ("[l]ower court judges are certainly free to note their disagreement with a decision of this Court," but they "must follow it").

It is black-letter law that a district court may not reach a contrary determination on remand regarding a question already answered by the appellate court; the appellate court's answer is law of the case. *See, e.g.*, *Wilbon*, 633 F.3d at 308 ("The law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to

govern the same issues in subsequent stages in the same case.")
(quotation marks omitted); *United States v. Husband*, 312 F.3d 247, 251
(7th Cir. 2002) ("[A]ny issue conclusively decided by this court on the
first appeal is not remanded."); *United States v. Bell*, 5 F.3d 64, 66 (4th
Cir. 1993) (the law of the case "forecloses relitigation of issues expressly
or impliedly decided by the appellate court"); *Barrow v. Falck*, 11 F.3d
729, 731 (7th Cir. 1993) ("[T]he district judge must take the appellate
decision as conclusive."); *see also United States v. Pileggi*, 703 F.3d 675,
679 (4th Cir. 2013) ("[W]hen this court remands for further proceedings,
a district court must, except in rare circumstances, implement both the
letter and spirit of the * * * mandate, taking into account [our] opinion
and the circumstances it embraces.") (quotation marks omitted). The
district court repeatedly departed from the law of the case established
in *Mey I*.

The district court embraced authorities that overtly criticize this
Court's earlier analysis. The remand opinion cites or quotes Judge
Harris's dissent from *Mey I* six times and praises it as "excellent."
JA224, 236, 238-239, 249. By contrast, the district court did not
acknowledge the *majority's* analysis in *Mey I*—except to suggest that

the Court reconsider it. JA249. The district court's opinion also quotes extensively from *Revitch*, which addresses the same arbitration provision at issue here and which the Ninth Circuit decided after this Court issued its opinion in *Mey I*. JA242-245. The district court acknowledged that "the Ninth Circuit obviously considered and rejected the Fourth Circuit decision" in *Mey I*. JA244. The district court then spent more than a page block-quoting the Ninth Circuit's criticisms of this Court's decision even though the district court was bound to follow this Court's decision instead. JA244-245.

The district court also embraced reasoning that this Court rejected in *Mey I*. For instance, this Court criticized arguments that rely on the hypothetical reach of AT&T's arbitration provision, explaining that the question before the Court was "not abstract," but "tethered to the facts of this dispute," and that the Court "need not define the outer limits of this arbitration agreement" to address the Agreement's application to Mey's TCPA claims against DIRECTV. *Mey I*, 971 F.3d at 294-95 (citing *Parm*, 898 F.3d at 878). In doing so, the Court expressly agreed with the Eighth Circuit's decision in *Parm*, which rejected the hypotheticals offered by the plaintiffs and the district court because

37

they had nothing to do with the "*actual* allegations" in that case. *Parm*, 898 F.3d at 874-78.

The district court paid no heed to this aspect of *Mey I*. Instead of judging the enforceability of the parties' arbitration agreement based on the *specific* claim before the court—namely, Mey's TCPA claim against AT&T's affiliate, DIRECTV—as mandated by this Court, the district court invoked the Ninth Circuit's contrary conclusion that reliance on hypotheticals is appropriate and quoted Judge Harris's discussion of hypotheticals in her dissent. JA238, 245.

The district court also block-quoted the hypotheticals relied on by the court in *Wexler*—the very case that this Court had rejected in *Mey I*. JA236, 238-242, 245; *Mey I*, 971 F.3d at 294-95. Indeed, the district court repurposed a large portion of its first opinion—a full 2½ pages are the same extended block quote from *Wexler* that it had used previously. *Compare* JA239-242, *with* JA179-181.[5] The district court's failure to adhere to this Court's decision on this point is underscored by the fact that it acknowledged this Court's instruction that hypothetical

---

[5]  The passage from *Wexler* was addressing contract formation—an issue this Court has already decided. Indeed, the court in *Wexler* refused to find the agreement unconscionably broad because that would be "in tension with *Concepcion*." 211 F. Supp. 3d at 504.

scenarios are irrelevant only when block-quoting the Ninth Circuit's *criticism* of that conclusion. JA245.

The district court also failed to heed this Court's recognition in *Mey I* that ordering arbitration of Mey's TCPA claims under AT&T's arbitration provision is not "absurd." 971 F.3d at 294 (acknowledging that "absurd" hypothetical scenarios were possible but distinguishing them from this case). That conclusion—which became law of the case—makes perfect sense. The Court was enforcing the plain language of the arbitration agreement, which requires arbitration of "all disputes and claims" between the parties, including "claims relating to advertising" and claims "based in * * * statute," both of which readily cover a TCPA claim. *Id.* at 293-94 (emphasis and quotation marks omitted); *see id.* at 293 ("[W]e have time and again emphasized that we must interpret and enforce the words of the particular arbitration provision to which the parties agreed.").

This Court also emphasized the "particular relevance" of the arbitration agreement's coverage of "'claims arising out of or relating to any aspect of the relationship between us.'" *Mey I*, 971 F.3d at 294 (citation omitted). As the Court explained, the relevant contract "states

39

that Mey 'consent[s] to the use by us or our authorized agents of * * * predictive or autodialing equipment * * * or other reasonable means to contact you to advise you about our Services *or other matters we believe may be of interest to you.*'" *Id.* (citation omitted). Further, "[o]ne 'aspect of the relationship' between Mey and AT&T Mobility and its affiliates" "is communication about matters of interest other than AT&T's services, *such as advertising affiliates' products and services*." *Id.* (citation omitted). It is therefore unsurprising that the arbitration provision would reach TCPA claims regarding DIRECTV's services. *Cf. Hearn v. Comcast Cable Commc'ns, LLC*, 992 F.3d 1209, 1215-16 (11th Cir. 2021) (declining to address the outer limits of the arbitration clause's breadth because the claim at issue was sufficiently related to the contract); *Cordoba v. DIRECTV, LLC*, 801 F. App'x 723, 725-26 (11th Cir. 2020) (similar).[6]

---

[6]    In addition, AT&T's "U-verse" brand has offered paid television service since 2006, well before Mey signed to accept the AT&T Wireless Customer Agreement in 2012. *See AT&T U-verse Timeline*, https://www.att.com/Common/merger/files/pdf/U-verse%20Timeline 41907.pdf. It could hardly be absurd for Mey to agree to arbitrate a claim against a member of the AT&T family of companies based on the marketing of a service that the AT&T family of companies has long provided.

In direct conflict with *Mey I*, the district court held that enforcing the arbitration provision with respect to Mey's TCPA claim would be "absurd," rendering the agreement unconscionable. JA237-239, 241-242, 244, 249. Quoting extensively from Judge Harris's dissent, *Revitch*, and *Wexler*, the district court repeated no fewer than seven times that *this Court's* interpretation of the arbitration provision contravenes a reasonable person's expectations of the Agreement. JA236-238, 243, 245. But *Mey I* forecloses the district court's determination on remand that "no reasonable person" would expect the arbitration provision to cover Mey's claims here.

In sum, it was improper for the district court to fail to adhere to the "rule of law" adopted in *Mey I. Wilbon*, 633 F.3d at 308 (quotation marks omitted). For that reason alone, the district court committed reversible error in its unconscionability analysis. Moreover, as we next explain, the district court's determination that the arbitration provision is unconscionable is also wrong as a matter of West Virginia law and is preempted by the FAA.

**B.    AT&T's Arbitration Provision Is Not Unconscionable Under West Virginia Law.**

In West Virginia, a contract term must be "both procedurally and substantively unconscionable" before a court may refuse to enforce it. *Credit Acceptance Corp. v. Front*, 745 S.E.2d 556, 564 (W. Va. 2013) (quotation marks omitted). Additionally, West Virginia "[c]ourts * * * apply a 'sliding scale' in making this determination: the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the clause is unenforceable, and vice versa." *Ocwen Loan Servicing*, 752 S.E.2d at 376 (quotation marks omitted).

Contrary to the district court's decision, neither form of unconscionability (much less both) is present here.

**1.    The arbitration agreement is not procedurally unconscionable.**

Procedural unconscionability "is concerned with inequities, improprieties, or unfairness in the bargaining process and formation of the contract." *Credit Acceptance Corp.*, 745 S.E.2d at 564 (cleaned up). In assessing procedural unconscionability, courts look to "the manner and setting in which the contract was formed, including whether each party had a reasonable opportunity to understand the terms of the

42

contract." *Ocwen Loan Servicing*, 752 S.E.2d at 388-89 (quotation marks omitted). Applying this standard to Mey's act of signing the Agreement, there was no procedural unconscionability here.

Specifically, there was nothing "hidden or unduly complex" (*Ocwen Loan Servicing*, 752 S.E.2d at 388-89 (quotation marks omitted)) about AT&T's arbitration provision or how it was presented to Mey. Before signing, Mey had the opportunity to read the entire Wireless Customer Agreement, either on the signature-capture-device screen or printed out on paper. JA145. Mey signed to accept the Agreement under a clear acknowledgment that stated: "I have reviewed and agree to the rates, terms, and conditions for the wireless products and services described in the Wireless Customer Agreement (including limitation of liability and arbitration provisions) and the Customer Service Summary, both of which were made available to me prior to my signing." JA34, 145, 150. The Wireless Customer Agreement itself highlighted in the second paragraph that it contains an arbitration provision, stating in bold capital letters that "**THIS AGREEMENT REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES, RATHER THAN JURY TRIALS OR CLASS**

43

**ACTIONS**.” JA42. And the arbitration provision was provided on page

7 in Section 2 of the document, in typeface that was the same size as the

rest of the Agreement, with a bold and underlined header alerting the

reader to an “Arbitration Agreement.” JA50. Courts have routinely held

that, absent other indicia of procedural unfairness, providing

conspicuous notice that an agreement contains an arbitration provision

forecloses a determination of procedural unconscionability.[7]

---

[7]  *See Price v. Morgan Fin. Grp.*, 2013 WL 3184671, at *3 (W. Va. June
24, 2013) (arbitration agreement that “contained a distinct reference,
directly above the signature line, to the agreement to arbitrate, and
that language was printed in capitalized letters” was not procedurally
unconscionable); *United States ex rel. TBI Invs., Inc. v. BrooAlexa, LLC*,
119 F. Supp. 3d 512, 531-32 (S.D. W. Va. 2015) (arbitration provision
was not procedurally unconscionable because notice of the provision was
provided directly above the signature line); *see also Wiseley v.
Amazon.com, Inc.*, 709 F. App’x 862, 864 (9th Cir. 2017) (“There is no
procedural unconscionability in the presentation of the arbitration
clause itself, which appears in the same size font as the rest of the
[agreement], with key terms bolded.”); *Larsen v. Citibank FSB*, 871 F.3d
1295, 1311 (11th Cir. 2017) (arbitration provision that was listed in the
agreement’s table of contents, was “set off in a new paragraph that
b[ore] the title ‘Arbitration; Waiver of Jury Trial’ in bold-faced type,”
and “appear[ed] in the same type as every other term in the agreement”
was not procedurally unconscionable); *Anderson v. Amazon.com, Inc.*,
478 F. Supp. 3d 683, 698 (M.D. Tenn. 2020) (arbitration clause was not
inaccessible because, “[a]lthough the full Arbitration Agreement is
located on page 12, information regarding the existence of agreement
can be found in bold font on the first page”).

The district court nevertheless held that the arbitration agreement is procedurally unconscionable because it is a "contract of adhesion." JA233-234. But West Virginia's Supreme Court has emphasized that "[t]here is nothing inherently wrong with a contract of adhesion." *Nationstar Mortg.*, 785 S.E.2d at 639 n.12 (quoting *Brown ex rel. Brown v. Genesis Healthcare Corp.*, 724 S.E.2d 250, 286 (W. Va. 2011)). That court has recognized that "[m]ost of the transactions of daily life involve such contracts that are drafted by one party and presented on a take it or leave it basis"; these contracts play the essential role of "simplify[ing] standard transactions." *Id.* (quoting *Brown*, 724 S.E.2d at 286). As a result, the mere fact that a form contract is "prepared by a party with more power" does *not* make it procedurally unconscionable under West Virginia law. *Id.* at 640 (listing cases); *see State ex rel. Dunlap v. Berger*, 567 S.E.2d 265, 273 (W. Va. 2002) (stating that "'a rule automatically invalidating adhesion contracts would be completely unworkable'") (citation omitted).

Indeed, as West Virginia's Supreme Court has held with respect to AT&T's arbitration provision in particular, "just because a contract providing for arbitration is a contract of adhesion, the contract is not

45

automatically unconscionable." *Shorts v. AT&T Mobility*, 2013 WL 2995944, at *2 (W. Va. June 17, 2013) (citing *State ex rel. AT&T Mobility v. Wilson*, 703 S.E.2d 543 (W. Va. 2010)). Under West Virginia law, an imbalance in bargaining power and "take it or leave it" terms are the defining characteristics of adhesion contracts, and thus "[f]inding that there is an adhesion contract is the beginning point for analysis, not the end of it." *Ocwen Loan Servicing*, 752 S.E.2d at 389 (quotation marks omitted).

Yet the district court's analysis barely went further. The court noted that AT&T is a sophisticated entity and that the arbitration provision was a non-negotiable term. JA234. But, again, an imbalance in bargaining power and "take it or leave it" terms are the defining characteristics of adhesion contracts. *See Ocwen Loan Servicing*, 752 S.E.2d at 389; *see also Nationstar Mortg.* 785 S.E.2d at 640 (explaining that the inability to opt out of an arbitration agreement in a form contract "is not in itself sufficient evidence that an arbitration agreement is grossly unfair and thus unenforceable on grounds of procedural unconscionability"). The district court also asserted that the arbitration agreement was presented to Mey on an electronic pinpad

46

device, "which displayed a few lines" of the Agreement "at a time."
JA234. The court made no mention, however, of the undisputed fact
that Mey could have printed the Agreement before signing it. JA145.

Finally, the court surmised that "[t]heoretically" Mey could have
"clicked a button at the bottom [of the screen] that skipped straight to"
the signature screen, thereby signing the document without reading it.
JA234. But it is black-letter law everywhere, including in West Virginia,
that "[a] party to a contract has a duty to read the instrument." *Am.
States Ins. v. Surbaugh*, 745 S.E.2d 179, 190 n.14 (W. Va. 2013)
(quotation marks omitted). Accordingly, whether Mey actually chose to
read the document before signing has no bearing on the contract's
enforceability. In addition, Mey has nowhere alleged that she was
"denied the right to read the agreement," "coerced into signing the
document," or "requested, and w[as] denied, the opportunity to take
further time to read and review" the Agreement. *Nationstar Mortg.*, 785
S.E.2d at 641. That a party might have signed a document without
reading it "does not excuse [her] from the binding effect of the
agreements contained in the executed document." *Id*. And, in any event,
the signature screen itself states that the Agreement contains

47

"arbitration provisions," putting Mey on notice that by signing she was agreeing to arbitrate. JA34, 245, 150.

In short, as West Virginia's Supreme Court of Appeals has recognized, entering into form contracts as part of sales transactions is commonplace in today's economy. *See Nationstar Mortg.*, 785 S.E.2d at 639. The fact that the parties entered into a form contract, coupled with hypothetical scenarios that are unsupported by the evidence, is therefore insufficient to demonstrate procedural unconscionability. Because "both substantive and procedural unconscionability" are required "to make out [a] traditional unconscionability claim" (*McFarland v. Wells Fargo Bank, N.A.*, 810 F.3d 273, 283 (4th Cir. 2016)), Mey's unconscionability argument should have failed at the first step.

### 2. The arbitration agreement is not substantively unconscionable.

The arbitration provision is also not substantively unconscionable. Under West Virginia law, "[a] contract term is substantively unconscionable only if it is both 'one-sided' and 'overly harsh' as to the disadvantaged party." *McFarland*, 810 F.3d at 279 (quoting *Dan Ryan Builders, Inc. v. Nelson*, 737 S.E.2d 550, 558 (W. Va. 2012)); *see also id.*

at 281 ("[S]ubstantive unconscionability is an equitable doctrine reserved for those cases in which a contract is so one-sided that it has an overly harsh effect on the disadvantaged party.") (quotation marks omitted).

Far from being "one-sided" or "overly harsh," the arbitration provision at issue in this case has been upheld by both the U.S. Supreme Court (*Concepcion*, 563 U.S. at 352) and the West Virginia Supreme Court of Appeals (*Shorts*, 2013 WL 2995944, at *6). Indeed, the latter court cited fourteen cases from across the country that "have likewise upheld" AT&T's arbitration clause. *Id.* at *6 n.6. And because of the pro-consumer features of AT&T's arbitration provision, the Supreme Court has recognized that consumers are "*better off* under their arbitration agreement with AT&T than they would have been" in class-action litigation. *Concepcion*, 563 U.S. at 352.

Conversely, AT&T's arbitration provision lacks the features that West Virginia courts have identified as problematic. For instance, when "an agreement to arbitrate imposes high costs that might deter a litigant from pursuing a claim, a trial court may consider those costs in assessing whether the agreement is substantively unconscionable."

49

*State ex rel. Richmond Am. Homes of W. Va., Inc. v. Sanders*, 717 S.E.2d 909, 921 (W. Va. 2011); *Brown v. Genesis Healthcare Corp.*, 729 S.E.2d 217, 229 (W. Va. 2012) (explaining that the high cost of arbitration and the potential to have to bear an opposing party's fees could make an arbitration provision unconscionable).

The district court paid no heed to either the numerous pro-consumer terms of the arbitration agreement or the West Virginia Supreme Court's decision in *Shorts*—which specifically rejected the argument that AT&T's arbitration provision is unconscionable—and the overwhelming body of other precedent holding that AT&T's arbitration agreement is not substantively unconscionable. The district court instead repackaged under the guise of unconscionability the same theories that this Court already rejected in *Mey I. See* pages 34-41, *supra.*

The district court also briefly stated that "[a]nother factor" bearing on substantive unconscionability was the "lack of real mutuality of the contract." JA239. But it failed to identify any way in which AT&T's arbitration agreement is non-mutual. For example, West Virginia courts have expressed concern when an agreement requires

50

"arbitration only for the claims of the weaker party but a choice of forums for the claims of the stronger party." *Brown*, 729 S.E.2d at 228 (quotation marks omitted); *Arnold v. United Cos. Lending Corp.*, 511 S.E.2d 854, 862 (W. Va. 1998) ("[W]here an arbitration agreement entered into as part of a consumer loan transaction contains a substantial waiver of the borrower's rights, including access to the courts, while preserving the lender's right to a judicial forum, the agreement is unconscionable * * *."). West Virginia courts have also criticized arbitration agreements that "limit[] the plaintiffs' rights [to seek damages] and not" the defendants'. *Richmond Am. Homes*, 717 S.E.2d at 922; *see also Goodwin v. Branch Banking & Trust Co.*, 2017 WL 960028, at *4 (S.D. W. Va. Mar. 10, 2017) (finding substantive unconscionability because arbitration agreement "heavily favor[ed]" the defendant bank by giving the bank a more favorable statute-of-limitations period and more remedies than the consumer), *aff'd,* 699 F. App'x 274 (4th Cir. 2017).

But AT&T's arbitration provision raises none of those concerns. It instead requires the arbitration of disputes equally, both for those brought by AT&T and its affiliates and for those brought by the

51

consumer, and it provides the consumer with more favorable arbitration remedies than are available to AT&T or its affiliates, or even that would be available to the consumer in court—namely, a potential $10,000 minimum award and double attorneys' fees.[8]

In sum, rather than identifying any way in which the arbitration provision was one-sided or unduly harsh, as required by West Virginia law, the district court concluded that the arbitration provision is

---

[8]    For the above reasons, AT&T's arbitration provision, which is mutually binding on Mey and AT&T and its affiliates (including DIRECTV), does not entail *any* degree of one-sidedness. But in all events, West Virginia law requires *extreme* one-sidedness for a determination of substantive unconscionability. *See, e.g.*, *Ocwen Loan Servicing*, 752 S.E.2d at 393-96 (arbitration agreement was not substantively unconscionable even though it (i) precluded either party from recovering the other's attorneys' fees, which the consumer argued was more likely to favor the defendant, and (ii) excluded from arbitration foreclosure claims brought by the lender-defendant); *Dan Ryan Builders, Inc. v. Nelson*, 2014 WL 496775, at *14 (N.D. W. Va. Feb. 6, 2014) (arbitration agreement that permitted defendant to litigate certain claims in court, while requiring plaintiff to arbitrate all claims, was "not so one-sided" or "unreasonably favor[able]" to the defendant as to be unconscionable); *Kucharek v. Dan Ryan Builders, Inc.*, 2013 WL 3365249, at *13 (N.D. W. Va. July 3, 2013) (same); *Baker v. Green Tree Servicing LLC*, 2010 WL 1404088, at *4 (S.D. W. Va. Mar. 31, 2010) ("mutual" fee-shifting provision in arbitration clause did not make arbitration agreement "one-sided" or substantively unconscionable, notwithstanding risk that plaintiff could be liable for corporate defendant's attorneys' fees). AT&T's arbitration provision has no features that are even close to the level of one-sidedness needed to declare an arbitration clause substantively unconscionable under West Virginia law.

substantively unconscionable because, in its opinion, the provision is "overbroad" and "absurd." JA249. That conclusion was foreclosed by this Court's decision in *Mey I* (*see* pages 34-41, *supra*) and the FAA's prohibition against treating arbitration as a disfavored form of dispute resolution (*see* pages 53-57, *infra*).

C.    **The District Court's Application Of West Virginia's Unconscionability Doctrine Is Preempted By The FAA.**

The district court's unconscionability determination is also preempted by the FAA.

Under well-settled law—including this Court's precedents—"the generally applicable contract defense of unconscionability may not be applied in a manner that targets the existence of an agreement to arbitrate *as the basis for* invalidating that agreement." *Muriithi*, 712 F.3d at 180 (emphasis added); *see Concepcion*, 563 U.S. at 341-44. That is, a court may not declare an arbitration provision unconscionable merely because it requires the parties to arbitrate their claims. As the Supreme Court has explained, "suspicion of arbitration" is "far out of step with our current strong endorsement of the federal statutes favoring this method of resolving disputes." *Rodriguez de Quijas v.*

53

*Shearson/Am. Express, Inc.*, 490 U.S. 477, 481 (1989). The Court has further noted that "by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute"; rather, the party merely "submits to their resolution in an arbitral, rather than a judicial forum." *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 266 (2009) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991)).

There is accordingly nothing unconscionable about agreeing to arbitrate a claim, including a statutory TCPA claim like Mey's. Indeed, as already noted, the Supreme Court has recognized that consumers are "*better off*" under AT&T's arbitration agreement than they would be in court. *Concepcion*, 563 U.S. at 352; *see Makarowski v. AT&T Mobility LLC*, 2009 WL 1765661, at *3 (C.D. Cal. June 18, 2009) (commenting that AT&T's arbitration agreement "contains perhaps the most fair and consumer-friendly provisions this Court has ever seen").

Despite these clear holdings, the district court repeatedly expressed hostility toward arbitration. It quoted at length from a law-review article that criticizes broadly worded arbitration provisions, saying that they have "metastasized" and decrying them as "arbitration

54

servitude." JA227-228. It is hard to imagine clearer hostility to arbitration agreements. The U.S. Supreme Court has deemed similar comparisons to be indicative of improper hostility to arbitration. For example, the Kentucky Supreme Court attempted to analogize an agent agreeing to arbitration on behalf of her principal as analogous to "waiv[ing] her 'principal's right to worship freely' or 'consent[ing] to an arranged marriage' or 'bind[ing] her principal to personal servitude.'" *Kindred Nursing Ctrs. Ltd. P'Ship v. Clark*, 137 S. Ct. 1421, 1427-28 (2017) (citation omitted). Writing for a seven-Justice majority (with one Justice not participating), Justice Kagan roundly rejected this argument, stating: "Placing arbitration agreements within that class reveals the kind of 'hostility to arbitration' that led Congress to enact the FAA" and "only makes clear the arbitration-specific character of the rule." *Id.* at 1428 (citation omitted). So too here.

The district court's hostility to arbitration did not stop there. When discussing procedural unconscionability, the district court remarked that, after signing the arbitration agreement, "Ms. Mey was now irrevocably locked in to face demands that she arbitrate any dispute arising out of any relationship with virtually any of AT&T

55

Mobility's corporate cousins"—suggesting that agreeing to arbitrate those claims was inherently harmful to Mey. JA234. When discussing substantive unconscionability, the district court dismissed the possibility that an AT&T Mobility customer like Mey might want to initiate arbitration against one of AT&T's affiliates, observing sarcastically: "as if that would ever happen." JA239. And throughout its opinion, the district court asserted that an otherwise even-handed arbitration agreement is "unconscionable" solely by virtue of its breadth. It is hard to imagine an application of unconscionability doctrine that is more targeted at, or hostile to, arbitration agreements.[9]

Put simply, the FAA preempts applying state law in a manner that treats arbitration as an inferior form of dispute resolution—which is precisely what the district court did here. Because the district court identified nothing unfair or one-sided about the arbitration agreement itself, its contention that the scope of the agreement is "absurd" boils down to forbidden "hostility towards arbitration." *Concepcion*, 563 U.S.

---

[9] The district-court opinion in *Thomas*, which the district court here quoted at length (JA246-249), likewise applies state unconscionability law in a manner that disfavors arbitration. But in all events, the *Thomas* court expressly disagreed with this Court's decision in *Mey I*, finding it "unpersuasive." 2020 WL 7260532, at *12. The district court here was not permitted to do the same.

at 342. In other words, the district court's "cry of 'unconscionable!' just repackages the tired assertion that arbitration should be disparaged as second-class adjudication." *Carbajal v. H&R Block Tax Servs., Inc.*, 372 F.3d 903, 906 (7th Cir. 2004). The district court's refusal to enforce Mey's arbitration agreement should again be reversed as incompatible with the FAA and Supreme Court precedent.

## CONCLUSION

The Court should reverse the district court's order denying DIRECTV's motion to compel arbitration and remand the case with instructions to grant DIRECTV's motion.

Dated: May 18, 2021

Respectfully submitted,

MAYER BROWN LLP

*/s/ Evan M. Tager*
Evan M. Tager
Archis A. Parasharami
Daniel E. Jones
Carmen N. Longoria-Green
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 263-3000
etager@mayerbrown.com

*Attorneys for Defendant-Appellant*
*DIRECTV, LLC*

## REQUEST FOR ORAL ARGUMENT

DIRECTV respectfully requests oral argument. This appeal raises important issues about whether district courts may refuse to enforce broad arbitration agreements as written and the proper scope of this Court's mandates. Oral argument will enable the parties to address those issues adequately and respond to any questions that the Court may have.

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), undersigned counsel certifies that this brief:

(i)     complies with the type-volume limitation of Rule 32(a)(7)(B)(i) and Local Rule 32(b) because it contains 11,157 words, including footnotes and excluding the parts of the brief exempted by Rule 32(f); and

(ii)     complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared using Microsoft Office Word 2016 and is set in Times New Roman font in a size equivalent to 14 points or larger.

Dated: May 18, 2021                    /s/ *Evan M. Tager*
                                       Evan M. Tager

## CERTIFICATE OF SERVICE

I certify that on this 18th day of May, 2021, the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

/s/ *Evan M. Tager*
Evan M. Tager